**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES M. RYAN,** *et al.*, | : | |
| | : | **Case No. 2:14-CV-38** |
| **Plaintiffs,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **vs.** | : | |
| | : | **Magistrate Judge Norah McCann King** |
| **PEDRO ROMO,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo")
Motion to Dismiss (Doc. 29), Defendant Pedro Romo's ("Romo") Motion to Dismiss (Doc. 30),
Mr. and Mrs. Romo's ("Plaintiffs") Motions to Strike (Docs. 31-32), and Defendant Wells Fargo
and Romo's Motion to Strike (Doc. 61).  Plaintiffs sue Wells Fargo, Romo, and the Secretary of
Housing and Urban Development ("HUD") ("Defendants") alleging defamation, civil
conspiracy, breach of contract, age discrimination by elder abuse, fraud, tortious interference,
and a violation of the Fair Debt Collection Practices Act ("FDCPA").  Plaintiffs also seek a
declaratory judgment that Plaintiffs use the property at issue as their primary residence.  Wells
Fargo moves to dismiss for failure to state a claim.  (Doc. 29).  Romo moves to dismiss for lack
of jurisdiction.  (Doc. 30).  Plaintiffs move to strike those motions.  (Docs. 31, 32).  Defendants
Wells Fargo and Romo move to strike additional briefing filed by Plaintiffs.  (Doc. 61).  For the
following reasons, Wells Fargo's Motion (Doc. 29) is **GRANTED**, and all claims against Wells
Fargo are hereby **DISMISSED**.  Romo's Motion (Doc. 30) is **GRANTED**, and all claims
against Romo are **DISMISSED**.  Plaintiffs' Motion to Strike (Docs. 31, 32) is **DENIED**.

Defendants' Motion to Strike (Doc. 61) is **GRANTED**, so Plaintiffs' additional briefing (Docs. 56-59) is **STRICKEN**.

## II. BACKGROUND

### A. Factual Background

*Pro se* plaintiffs, James Ryan and Carolyn Ryan, are individuals who own the property in question, located at 3165 Dale Avenue in Columbus, Ohio (the "Property"). Defendant, Pedro Romo, lives in South Carolina and works for Wells Fargo. Defendant, Wells Fargo, is a South Dakota corporation and is the original creditor for a mortgage taken by Plaintiffs. Defendant Shaun Donovan is the Secretary of HUD and resides in Washington, DC.

Wells Fargo entered into a mortgage contract (the "First Mortgage") with Plaintiffs for the Property in December 2008. HUD served as the government insurer for the First Mortgage. That same month, the Secretary of HUD entered into a second mortgage contract (the "Second Mortgage") with Plaintiffs for the Property. Both mortgages include a condition that the lenders can require payment in full if the Plaintiffs cease to use the Property as their principal residence. Defendant Romo, on behalf of Wells Fargo, sent a letter to Plaintiffs on September 6, 2013 (the "September Letter"), which stated that "we were recently notified that you are not currently residing in the property." (Doc. 28 at 63). The September Letter was printed on Wells Fargo's letterhead, and it included a return address to Wells Fargo and contact information for Wells Fargo. The September Letter informed the Plaintiffs that "[w]hen you no longer occupy the above property as your primary residence and are unable to reoccupy this property, your reverse mortgage loan becomes due and payable." The September Letter also requested that the Plaintiffs complete the enclosed form, which would inform Wells Fargo whether the Plaintiffs intend to reoccupy or sell the Property. Plaintiffs do not suggest that they filled out or returned

this form to Wells Fargo.

Wells Fargo sent another communication on November 8, 2013, which requested that the Plaintiffs fill out the enclosed occupancy verification form. This form was meant to verify Plaintiffs' primary residence. The Plaintiffs filled out the occupancy verification form, signed it on November 21, 2013, and mailed it to Wells Fargo. That form was delivered on December 2, 2013. Plaintiffs stated on the form that they use the Property as their primary residence. Romo, on behalf of Wells Fargo, sent a letter (the "December Letter") to Plaintiffs on December 17, 2013, stating that Plaintiff's mortgage was due in full because "we have learned about a change in your residency status for the property." The December Letter was printed on Wells Fargo's letterhead, and it included a return address to Wells Fargo and contact information for Wells Fargo. The December Letter explained that as provided under the terms of the mortgage, Wells Fargo now requests that the mortgage balance be paid in full immediately. In the December Letter, Wells Fargo requests "[a] letter of intent indicating plans for the property and repayment of this reverse mortgage." (Doc. 28 at 35). The December Letter also requests, "[p]lease contact us as soon as possible to discuss your options." (*Id.* at 38). Plaintiffs do not suggest that they contacted Wells Fargo after receipt of this December Letter.

Plaintiffs allege that the December Letter constitutes a notice of acceleration that breaches the terms of the *Second Mortgage*. (*Id.* at ¶ 67). But the plain language of the December Letter only references the First Mortgage, which Plaintiffs had with Wells Fargo. (*Id.* at 35-38). Plaintiffs also allege that Wells Fargo is merely a debt collector for the First Mortgage, which is owned by HUD. (Id. at ¶ 78). But the note itself and the December Letter demonstrate that Wells Fargo is the creditor and HUD merely serves as the government insurer of the loan.

**B. Procedural Background**

In January 2014, Plaintiffs filed a Complaint (Doc. 1) in this Court.  With leave of the Court, on June 30, 2014, each Plaintiff filed identical amended complaints (Docs. 27, 28).[1]  The Clerk electronically filed the amended complaints on June 30, 2014, which resulted in electronic service of the file-stamped amended complaints upon defendants through counsel.  Neither Wells Fargo nor Romo challenged the sufficiency of this service.  Wells Fargo filed a Motion to Dismiss for Failure to State a Claim fourteen days later, on July 14, 2014.  (Doc. 29).  Romo filed a Motion to Dismiss for Lack of Jurisdiction on the same date.  (Doc. 30).  Plaintiffs filed Motions to Strike on July 29, 2014.  Plaintiffs argued that Defendants' motions to dismiss were premature because Plaintiffs had not yet served either defendant with the amended complaint.  (Docs. 31, 32).  Plaintiffs filed responses to Wells Fargo's Motion to Dismiss for Failure to State a Claim on August 25, 2014.  (Docs. 39, 40).  Plaintiffs filed responses to Romo's Motion to Dismiss for Lack of Jurisdiction on September 2, 2014.  (Docs. 42, 43).  Wells Fargo timely replied.  (Doc. 44).  Romo timely replied.  (Doc. 45).  At this point, the motions were fully briefed.

Plaintiffs served hard copies of their amended complaints on Wells Fargo and Romo in October 2014.  (Docs. 50, 51).  Wells Fargo and Romo filed a response to that service in November 2014, which stated that they had already moved to dismiss the amended complaint and stated those motions were fully briefed.  (Doc. 54).  Plaintiffs filed additional briefing for Wells Fargo's Motion to Dismiss for Failure to State a Claim in December 2014.  (Docs. 56, 57).  Plaintiffs also filed additional briefing for Romo's Motion to Dismiss for Lack of Jurisdiction in December 2014.  (Docs. 58, 59).  Wells Fargo and Romo filed a Motion to Strike Plaintiffs'

---

[1] Throughout the case, Plaintiffs have each filed an individual brief and motion, even though the filings are identical. For consistency, this Court will refer only to the latter filing when citing Plaintiffs' filings.

additional responses (Docs. 56-59) because the motions had already been fully briefed and

Plaintiffs did not seek leave of the Court to file additional briefing.  (Doc. 61).  Plaintiffs filed

responses to that Motion to Strike.  (Docs. 62, 63).

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows for a case to be dismissed for "failure to

state a claim upon which relief can be granted."  Such a motion "is a test of the plaintiff's cause

of action as stated in the complaint, not a challenge to the plaintiff's factual allegations."  *Golden*

*v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir.2005).  Thus, a court must construe the

complaint in the light most favorable to the non-moving party.  *Total Benefits Planning Agency,*

*Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir.2008).  But a court is not

required to accept as true mere legal conclusions unsupported by factual allegations.  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 664 (2009).  Although liberal, Rule 12(b)(6) requires more than bare

assertions of legal conclusions.  *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir.1993) (citation

omitted).  Generally, a complaint must contain a "short and plain statement of the claim showing

that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  The complaint must "give the

defendant fair notice of what the claim is, and the grounds upon which it rests."  *Nader v.*

*Blackwell*, 545 F.3d 459, 470 (6th Cir.2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93

(2007)).  In short, a complaint's factual allegations "must be enough to raise a right to relief

above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It must

contain "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  But not

all pled facts must be taken as true, because "when a written instrument contradicts allegations in

the complaint to which it is attached, the exhibit trumps the allegations."  *Creelgroup, Inc. v.*

*NGS Am., Inc.*, 518 F. App'x 343, 347 (6th Cir. 2013) (quoting *Williams v. CitiMortgage, Inc.,*

498 Fed.Appx. 532, 536 (6th Cir.2012)).

A plaintiff bears the burden of establishing that personal jurisdiction over a defendant exists. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989)). Where, as here, "the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.'" *Id.* (quoting *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir. 1988); *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991)). Plaintiff can make this showing by " 'establishing with reasonable particularity sufficient contacts between [the defendants] and the forum state to support jurisdiction.' " *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. California Savings Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987)). In deciding a Rule 12(b)(2) motion, the Court "construe[s] the facts in the light most favorable to the non-moving party," and "*does not weigh* the controverting assertions of the party seeking dismissal." *CompuServe Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996) (emphasis in original) (citing *Theunissen,* 935 F.2d at 1459).

## IV. LAW AND ANALYSIS

### A. Preliminary Motions to Strike

#### 1. Plaintiff's Motion to Strike

Plaintiffs argue that Wells Fargo's and Romo's motions to dismiss were premature because Plaintiffs had not yet served Defendants with their amended complaint.  (Docs. 31, 32). The Court disagrees.

Plaintiffs contend that the Motion was preemptive because Plaintiffs had not yet served Defendants with the Amended Complaint. (Doc. 31 at 1). Plaintiffs concede that the Clerk filed the Amended Complaint via the electronic filing system on June 30, 2014. (*Id.* at 2). Defendants Wells Fargo and Romo filed their motions to dismiss fourteen days after electronic filing, on July 14, 2014. (Doc. 29, 30). Plaintiff alleges that service to the defendants by means of the Clerk's electronic filing is inapplicable because Plaintiff is "not a part of the Court's e-file system." (Doc. 31 at 2).

Plaintiffs' argument is unpersuasive. Plaintiffs ask the Court to strike Defendants' motions because Plaintiffs failed to complete mail service in a timely manner. Granting this request would reward Plaintiff's failure to serve defendants hard copies of the amended complaint even though Defendants already received service through the electronic filing system. Plaintiffs' Motions to Strike (Docs. 31, 32) are **DENIED**.

## 2. Wells Fargo and Romo's Motion to Strike

After the motions to dismiss were fully briefed, Plaintiffs filed additional briefing in opposition of the motions. (Docs. 56-59). Defendants Wells Fargo and Romo filed a motion to strike Plaintiffs' additional responses because the motions had already been fully briefed and Plaintiffs did not seek leave of the Court to file additional briefing. (Doc. 61).

Plaintiffs served hard copies of their amended complaints on Wells Fargo and Romo in October 2014 (Docs. 50, 51) even though the Clerk had electronically filed that amended complaint in June 2014. Defendants never contested the earlier electronic service. Wells Fargo and Romo filed a response to that service in November 2014, which stated that they had already moved to dismiss the amended complaint and stated those motions were fully briefed. (Doc. 54). Plaintiffs filed additional briefing for Wells Fargo's Motion to Dismiss for Failure to State a

Claim in December 2014.  (Docs. 56, 57).

Plaintiffs argue that their briefing in opposition of the motions should not be stricken because the motions to dismiss were not properly before the Court until that time.  The Defendants state that the earlier electronic service was adequate and argue that the Court should not allow additional briefing just because the Plaintiffs re-served Defendants.  This Court agrees, and Defendants' motion to strike (Doc. 61) is **GRANTED**.  The Court will strike Plaintiffs' additional briefing (Docs. 56-59) and will not consider those filings in its analysis of the motions to dismiss.

### B. Wells Fargo's Motion to Dismiss for Failure to State a Claim

### 1. Motion to Dismiss the First Cause of Action

### a. Defamation

Wells Fargo seeks to dismiss Plaintiffs' defamation claim because Plaintiffs did not plead facts to suggest that a defamatory statement was published to a third party and because the statement is not defamatory.  Plaintiffs do not respond directly to this argument, but they state that Wells Fargo needed permission from the Secretary of HUD to accelerate the mortgage, which suggests that the statement must have been published to HUD.  The Court finds that the statement that Plaintiffs do not reside at the Property is not defamatory under Ohio law.

A defamation claim in Ohio requires: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Harris v. Bornhorst*, 513 F.3d 503, 522 (6th Cir. 2008) (quoting *Akron–Canton Waste Oil, Inc. v. Safety–Kleen Oil Serv., Inc.,* 611 N.E.2d 955, 962 (Ohio Ct.App.1992)).  A defamatory statement is "a false

statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.' " *Jackson v. Columbus*, 117 Ohio St. 3d 328, 331, 883 N.E.2d 1060, 1064 (2008) (quoting *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 73 Ohio St.3d 1, 7, 651 N.E.2d 1283 (1995)). A defamatory statement will be found when a plaintiff pleads that a defendant made disclosures to "various debt collectors, Credit Reporting Agencies, and [] publicly filing foreclosure." *Ponder v. Bank of Am., N.A.*, 2011 WL 8307207, at *6 (S.D. Ohio Mar. 8, 2011).

In the case *sub judice*, Plaintiffs assert that the false statement is that the Plaintiffs no longer lived in the Property as their primary residence. (Doc. 28 at ¶ 29). But that statement is not a defamatory one under Ohio law. It does not injure Plaintiffs' reputation, expose Plaintiffs to public shame, or adversely affect Plaintiffs' profession. Here, Plaintiffs suggest that it caused injury because Wells Fargo made the statement to the Secretary of HUD, and then HUD gave approval to accelerate the mortgage. (Doc. 39 at 3). But that type of injury is not the type of injury that is proper under Ohio's defamation law. The type of publication that Plaintiffs pled here are different than the facts in *Ponder*. There, the plaintiffs pled that the defendant publicly filed a foreclosure on the plaintiff's property. That public filing could injure a person's reputation, which is one of the requirements for a defamatory statement. But here, Plaintiffs have not pled any facts to suggest that Defendants made any public filings. They only suggest that Wells Fargo informed HUD of a change in address, which is not the type of statement that Ohio's defamation law criminalizes.

The statement is not defamatory as a matter of law, so the Court need not analyze whether Plaintiffs pled the claim with adequate specificity. Wells Fargo's motion to dismiss

Plaintiffs' defamation claim is **GRANTED.**

### b. Civil Conspiracy

Wells Fargo seeks to dismiss Plaintiffs' civil conspiracy claim because the complaint merely alleges parallel conduct but not an *agreement* among any defendants, which is required for a civil conspiracy claim under Ohio law.  Plaintiffs argue that all parties knew that there was a misrepresentation about Plaintiffs' primary residence but do not address their lack of pleading an agreement.  The Court finds that Plaintiffs' failure to plead facts about any agreement by Defendants is fatal to the civil conspiracy claim.

Civil conspiracy in Ohio is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages."  *Roark v. Rydell*, 174 Ohio App. 3d 186, 195, 881 N.E.2d 333, 340 (Ohio Ct.App. 2007) (quoting *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995)).  "A civil conspiracy claim cannot succeed without an underlying unlawful act." *Roark*, 881 N.E.2d at 340 (quoting *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475, 700 N.E.2d 859, 868 (1998)).  And a successful claim must allege "operative facts constituting an agreement between [the conspirators]."  *Collins v. Nat'l City Bank*, 2003-Ohio-6893, ¶ 30 (Ohio Ct.App.); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007) ("an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality").

Plaintiffs have alleged no facts to suggest that any Defendants reached an agreement of any kind.  Plaintiffs alleged that defendants knew about the misrepresentation (that Plaintiffs did

not use the Property as their primary residence) (Doc. 28 at ¶ 31), but they do not plead any facts

about any *agreement* to injure the Plaintiffs.  Furthermore, Plaintiffs do not plead any

information about the context in which any alleged agreement was made.  At most, the amended

complaint suggests that Romo and Wells Fargo informed HUD about Plaintiffs' change of

residence and HUD accelerated the mortgage.  (Doc. 28 at ¶ 33).  But the conveyance of

information, even if defendants knew the information is false, does not constitute an *agreement*

between defendants and HUD.  For this reason, the motion to dismiss the civil conspiracy claim

is **GRANTED**.

### c. Breach of Contract

Wells Fargo contends that the breach of contract claim should be dismissed because

Plaintiffs have not identified any contract term that Wells Fargo violated and Plaintiffs have not

suffered damages.  Plaintiffs respond that Wells Fargo breached the mortgage contract when it

declared Plaintiffs to be in default in the December Letter.  The breach of contract claim fails

because Wells Fargo did not breach the contract by sending the December Letter and Plaintiffs

did not plead damages with adequate specificity.

A claim for breach of contract in Ohio "must show that a contract existed, the plaintiff

performed, the defendant breached, and the plaintiff suffered damages."  *Pavlovich v. Nat'l City

Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (citing *Wauseon Plaza Ltd. P'ship v. Wauseon

Hardware Co.,* 156 Ohio App.3d 575, 807 N.E.2d 953, 957 (Ohio Ct.App. 2004)); *see also

Kincaid v. Erie Ins. Co.*, 2010-Ohio-6036, 128 Ohio St. 3d 322, 944 N.E.2d 207, 208 (where the

court affirmed the lower court's interpretation of the elements of a breach of contract claim in

Ohio).

Plaintiffs alleged that by sending the December Letter, HUD[2] wrongfully commenced a procedure to seize the Property, accelerate the mortgage, and demanded that the Plaintiffs pay the mortgage in full or vacate the property.  (Doc. 28 at ¶ 33).  But they have not alleged that Wells Fargo initiated any foreclosure or eviction action against Plaintiffs.  Importantly, Plaintiffs have not specified a term of the contract that Wells Fargo violated by sending the December Letter.  Further, the Court's independent reading of the mortgage contract does not reveal any term of the contract that Wells Fargo violated by sending the December Letter.  (Doc 28 at 42-50).  Wells Fargo correctly points out that if Plaintiffs have used the Property as their primary residence "and Wells Fargo attempted to foreclose on the grounds that it allegedly was not, then the [Plaintiffs] could have a viable defense to that court action.  But no such court action has been filed and Wells Fargo has taken no steps to suggest that one will be filed."  (Doc. 29 at 18).  The December Letter was not a breach because neither Plaintiffs nor Wells Fargo suggest that Wells Fargo has taken any steps to collect the amount of the accelerated mortgage.

Moreover, the breach of contract claim fails because Plaintiffs did not adequately plead the element of damages.  Plaintiffs assert that Wells Fargo "damaged [Plaintiffs] in an amount in excess of $547,000" (Doc. 28 at ¶ 33) but do not explain any calculation for that amount.  Plaintiffs do not suggest that Wells Fargo foreclosed on or evicted Plaintiffs from the Property, so Plaintiffs cannot fairly include the value of their home in that calculation.  The Plaintiffs have provided no specificity about their alleged damages.  Because Plaintiffs did not plead facts to suggest a plausible breach of contract or damages, the breach of contract claim against Wells Fargo is **DISMISSED**.

---

[2] The Plaintiffs suggest that HUD is the creditor for the First Mortgage, but they misinterpret the legal relationship between the parties.  This Court will liberally construe the complaint for the *pro se* Plaintiffs and assume that the Plaintiffs made this claim against Wells Fargo for purposes of this breach of contract analysis.  Wells Fargo recognized the mistake and responded to the claim as if it had been written against Wells Fargo.  HUD did not file a motion to dismiss, so the Court need not analyze whether the breach of contract claim could succeed against HUD.

### d. Age Discrimination by Elder Abuse

Wells Fargo seeks to dismiss this claim because there is no such viable claim, and the amended complaint does not provide any facts that there was disparate treatment based on age. Plaintiffs do not respond to that argument.  In their amended complaint, Plaintiffs merely allege the claim and support it by stating that Wells Fargo "wrongfully and fraudulently informed HUD as to their breach of the mortgages."  (Doc. 28 at ¶ 33).

Assuming that Wells Fargo wrongfully informed HUD that Plaintiffs breached their mortgage, Plaintiffs have not pled enough information to suggest that Wells Fargo was motivated by an intent to discriminate against Plaintiffs or because Plaintiffs are a particular age.  Plaintiffs only suggest that Wells Fargo engaged in an action of informing HUD without asserting facts that suggest discrimination of any kind.  Their claim of age discrimination is **DISMISSED**.

### e. Fraud

Wells Fargo seeks to dismiss Plaintiffs' fraud claim because the context of the fraud is not pled with adequate specificity.  Plaintiffs argue that they provided adequate specifics.  They allege at one point that the fraudulent statement was made in the December Letter, which Wells Fargo sent to Plaintiffs (Doc 39 at 9) and at another point that the fraudulent statement was made to HUD without providing details about the circumstances of that communication (*Id.* at 10). The Plaintiffs do not provide adequate specificity to either allegation, thus their fraud claim fails.

In Ohio, a successful fraud claim must plead: "(1) a representation, (2) material to the transaction, (3) made falsely, with knowledge of its falsity, or with such reckless disregard for whether it is true or false that knowledge may be inferred, (4) with the intention of misleading another into relying upon it, (5) that causes the other party injury." *Roark*, 881 N.E.2d at 343 (citing *Burr v. Stark Cty. Bd. of Commrs.* 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986)).

Furthermore, to comply with Federal Rule of Civil Procedure 9(b), a complaint for fraud must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Gupta v. Terra Nitrogen Corp.,* 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998) (quoting *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 51 (2d Cir. 1995)).

Plaintiffs' response (Doc 39 at 9-10) suggests that Wells Fargo committed fraud both in its communication with Plaintiffs in the December Letter and in its communication with HUD.[3] But neither possibility can succeed because Plaintiffs did not plead the required element of injury with adequate specificity. As discussed above, Plaintiffs assert that Wells Fargo injured the Plaintiffs "in an amount in excess of $547,000" (Doc. 28 at ¶ 33) but do not explain any basis or calculation for that amount. Plaintiffs do not suggest that Wells Fargo has foreclosed on or evicted Plaintiffs from the Property, so Plaintiffs cannot include the lost value of their home in that calculation. The Plaintiffs have not pled any actual injury. Plaintiffs' fraud claim against Wells Fargo is **DISMISSED**.

### 2. Motion to Dismiss Third Cause of Action[4] – Tortious Interference

Wells Fargo seeks to dismiss the tortious interference claim because the theory is based on the idea that the December Letter constitutes a breach of the Second Mortgage with HUD, but the plain language of the December Letter shows that it does no such thing.[5] Plaintiffs respond with a restatement of their assertions from the amended complaint without addressing the inconsistency between the letter's plain language and the assertions in the complaint. The Court

---

[3] Although this Court looks only to the amended complaint in determining the validity of a motion to dismiss, the Court interprets the pleadings liberally for a *pro se* litigant and looks to the Plaintiffs' response to lend clarity to the amended complaint. For this reason, the Court will consider both scenarios as it examines the amended complaint.
[4] The Second Cause of Action is directed only at HUD, so Wells Fargo does not move to dismiss it.
[5] Plaintiffs seem to misunderstand the December Letter. Plaintiffs suggest that the December Letter demands an acceleration of both their First Mortgage (held by Wells Fargo) and their Second Mortgage (held by HUD). But the December Letter only references an acceleration of the First Mortgage. The tortious interference claim is premised on this misunderstanding.

finds that the claim for tortious interference must fail.

A successful claim for tortious interference must include the following elements: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St. 3d 171, 176, 707 N.E.2d 853, 858 (1999). When considering a motion to dismiss, a court traditionally must consider all facts in the light most positive to the non-moving party. But "when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Creelgroup*, 518 F. App'x at 347 (quoting *Williams v. CitiMortgage,* 498 Fed.Appx. at 536).

Plaintiffs assert that the December Letter constituted a notice of acceleration of the Second Mortgage between Plaintiffs and HUD. (Doc. 28 at ¶ 67). But the December Letter does not reference the Second Mortgage. The December Letter is attached to the amended complaint and directly contradicts the allegations in the amended complaint, so the December Letter trumps Plaintiff's assertions in the complaint. The December Letter does not constitute an acceleration or breach of the Second Mortgage, as Plaintiffs suggest, so Plaintiffs have not adequately pled the third element of a tortious interference claim. Wells Fargo's motion to dismiss this claim is **GRANTED**.

### 3. Motion to Dismiss Fourth Cause of Action – FDCPA

Wells Fargo asserts that the FDCPA claims should be dismissed because, as an original creditor, Wells Fargo is not subject to the FDCPA, which applies only to debt collectors. Plaintiffs respond that the First Mortgage is a debt due to HUD and that Wells Fargo merely acts as a collector of that debt. (Doc. 39 at 12). The Court agrees with Wells Fargo after an examination of the December Letter and the First Mortgage.

Both parties agree that the FDCPA applies only to debt collectors, so the remaining issue is whether Wells Fargo qualifies as a debt collector. "The term 'debt collector' means any person … who regularly collects or attempts to collect … debts owed or due or asserted to be owed or due [to] *another*." 15 U.S.C.A. § 1692a(6) (emphasis added). In other words, "a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).

The First Mortgage is attached to the amended complaint, and states that the "Security Instrument is given to Wells Fargo Bank, N.A." and Wells Fargo is later described as the "Lender." (Doc. 28 at 42). Because the First Mortgage is attached to the amended complaint and directly contradicts the assertions in the complaint, the written instrument trumps those assertions. The First Mortgage states that the lender is Wells Fargo, so Wells Fargo is the creditor and is not a debt collector. For that reason, the FDCPA does not apply to Wells Fargo with regards to the First Mortgage. Plaintiffs' fourth cause of action against Wells Fargo is therefore **DISMISSED**.

### 4. Motion to Dismiss Fifth Cause of Action – Declaratory Judgment

Plaintiffs seek a declaratory judgment that they use the Property as their primary residence. Wells Fargo contends that a declaratory judgment is unnecessary because there is no ongoing controversy. Plaintiffs respond that Wells Fargo has continued to harass Plaintiffs since sending the Letter in December 2013.[6] This Court finds that there is not an ongoing controversy,

---

[6] Plaintiffs argue that "Wells Fargo has continued to harass" Plaintiffs by sending an additional non-occupancy letter in April 2014, charged an "assessment fee" of $423 in December 2013, charged an inspection fee of $15 in June 2014, and sent an inspector to the property in August 2014 to determine if the Plaintiffs were residing in the Property. (Doc. 39 at 4). But none of these assertions were included in the amended complaint. The Court must evaluate the facts presented in the *complaint* when considering a motion to dismiss, so the Court does not consider these additional facts in its consideration of the motion. Furthermore, these additional facts would not rise to the level of an "ongoing controversy" even if they had been pled in the amended complaint. Plaintiffs agreed to allow

so declaratory relief is not proper at this time.

The Sixth Circuit has adopted a five-factor test for determining whether a district court should consider a request for declaratory relief.  The factors are:

(1) whether the judgment would settle the controversy;

(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*";

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy that is better or more effective.

*AmSouth Bank v. Dale*, 386 F.3d 763, 785 (6th Cir. 2004).

The declaratory relief would not serve to settle a controversy because there is no ongoing controversy between the parties.  And it would not clarify the legal relations because Wells Fargo has not brought an eviction or foreclosure action on the Property.  Wells Fargo correctly points out that if Plaintiffs have used the Property as their primary residence "and Wells Fargo attempted to foreclose on the grounds that it allegedly was not, then the [Plaintiffs] could have a viable defense to that court action.  But no such court action has been filed and Wells Fargo has taken no steps to suggest that one will be filed." (Doc. 29 at 18).  A declaratory judgment would not clarify the legal relations between Wells Fargo and Plaintiffs, and there is also no pending controversy between Wells Fargo and Plaintiffs at this time, so a declaratory judgment would not be useful.  The motion to dismiss Plaintiffs' fifth cause of action against Wells Fargo is **GRANTED**.

---

inspectors on the Property in the terms of their First Mortgage contract, the Plaintiffs plead no facts that suggest the additional fees were for the purpose of harassing the Plaintiffs, and one additional letter does not create an ongoing controversy.

## C. Romo's Motion to Dismiss for Lack of Jurisdiction

Mr. Romo alleges that all claims against him should be dismissed from this Court because sending letters on behalf of his employer to an Ohio address is insufficient under Ohio's long arm statute and Due Process to generate personal jurisdiction in Ohio.  Mr. Romo also alleges that Ohio's corporate shield doctrine applies, which shields him from personal jurisdiction for actions taken on behalf of his employer.  Plaintiffs argue that they pleaded adequate facts to demonstrate Mr. Romo's contacts with the state and that the corporate shield doctrine does not apply because Mr. Romo did not file an affidavit that he sent the letters on behalf of his employer.  Based on the allegations in the amended complaint and attached documentation, it is clear that Mr. Romo did not have adequate contacts with the forum state, so Mr. Romo's motion to dismiss for lack of jurisdiction is persuasive.

Mr. Romo misconstrues the corporate shield doctrine in the Sixth Circuit.  In fact, fifteen years ago, the Sixth Circuit abrogated case law that Mr. Romo cited in his motion.  The Sixth Circuit held that while " 'jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation' … the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants." *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974)).  Sixth Circuit precedent is clear that Mr. Romo can be subject to personal jurisdiction in Ohio even though his actions were on behalf of his employer.  Mr. Romo's argument that the corporate shield doctrine protects him from personal jurisdiction unequivocally fails.

A plaintiff has the burden to demonstrate that a court has personal jurisdiction over each

defendant.  *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989)).  To establish personal jurisdiction over a defendant, a plaintiff must fulfill both the state's long arm statute and the due process guarantees of the constitution.  *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).  Ohio's long arm statute includes nine ways in which an out-of-state defendant shall be subject to personal jurisdiction in Ohio.  Plaintiffs state that four of these apply to Mr. Romo, including:

> (1) Transacting any business in this state;
>
> (3) Causing tortious injury by an act or omission in this state;
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(Doc. 42 at 2); Ohio Rev. Code Ann. § 2307.382(A).

Plaintiffs do not allege that Mr. Romo conducted any business in Ohio, that Mr. Romo was ever in Ohio or that he made an act or omission while in Ohio, or that Mr. Romo regularly does business or has a persistent course of conduct in Ohio.  (Doc. 28).  So Plaintiffs do not meet the requirements of subsections (1), (3), or (4).  But on the other hand, Plaintiffs allege that Mr. Romo sent the December Letter to Plaintiffs, which stated Plaintiffs were not using the Property as their primary residence and thus had violated their mortgage with Wells Fargo.  (*Id.* at ¶ 10).  They allege that Mr. Romo wrongfully accelerated Plaintiffs' mortgage and that the Plaintiffs were injured in the amount of $547,500.  (*Id.* at ¶ ¶ 13, 12).  These assertions plausibly meet the requirements of subsection six of Ohio's long arm statute because Mr. Romo acted outside of

Ohio, but Plaintiffs assert that those actions purposefully caused injury to Plaintiffs in Ohio. Because a plaintiff is only required to make a *prima facie* showing that personal jurisdiction is proper at this stage of the litigation, this Court will assume that Ohio's long arm statute has been satisfied and will next examine the due process requirements for jurisdiction.

To fulfill the due process requirements for personal jurisdiction, "[f]irst, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Berning v. BBC, Inc.*, 575 F. Supp. 1354, 1356 (S.D. Ohio 1983) (citing *Southern Machine Co., Inc. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir.1968)). "[T]he 'purposeful availment' requirement is satisfied when the defendant's contacts with the forum state are such that 'he should reasonably anticipate being haled into court there.' " *Ganote Consulting & Software Design, Inc. v. Imperial Optical, Inc.*, No. CIV.A. 3:02-CV-65-H, 2002 WL 31375036, at *4 (W.D. Ky. Oct. 17, 2002) (quoting *Compuserve, Inc. v. Patterson,* 89 F.3d 1257, 1263 (6th Cir.1996)). Importantly, "the purposeful availment [element] does not require that a defendant be physically present in the forum state." *Ganote*, 2002 WL 31375036, at *4 (citing *Compuserve,* 89 F.3d at 1264). Communications alone can rise to the level of purposeful availment. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1266 (6th Cir.1996) (where defendant purposely availed himself when he sent numerous letters, e-mail messages, and made numerous phone calls to plaintiff in another state). But a single letter, even one threatening litigation, does not constitute purposeful availment. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000) (upholding a district court's decision that a defendant who sent only one letter to a

plaintiff did not purposely avail himself of the laws in the state where the letter was sent); *Invisible Fence, Inc. v. Fido's Fences, Inc.*, 687 F. Supp. 2d 726, 736 (E.D. Tenn. 2009) (where the court determined that if a defendant only sends one letter to plaintiff in the forum state, that does not constitute purposeful availment in that forum state).

In this case, Plaintiffs have alleged that Mr. Romo sent them two letters: one non-occupancy notification (Doc. 28 at 63); and one that stated that Plaintiffs' mortgage with Wells Fargo was due and payable.  (Doc. 28 at 35).  But Plaintiffs' amended complaint does not allege that Mr. Romo had any further contact with Ohio than sending these two letters to Plaintiffs' Ohio address.  While Plaintiffs do not have to allege that Mr. Romo was physically present in Ohio, they must allege more than his authorship of two letters sent to Ohio.  Because authoring and sending only two letters to Ohio residents does not suggest that Mr. Romo purposefully availed himself of Ohio laws, due process protects Mr. Romo from Ohio jurisdiction.  Mr. Romo's motion to dismiss for lack of jurisdiction is **GRANTED**.

### V. CONCLUSION

For the foregoing reasons, Wells Fargo's motion to dismiss (Doc. 29) is **GRANTED**, and all claims against Wells Fargo are hereby **DISMISSED**.  Romo's motion to dismiss (Doc. 30) is **GRANTED**, and all claims against Romo are **DISMISSED**.  Plaintiffs' Motion to Strike (Docs. 31, 32) is **DENIED**.  Defendants' Motion to Strike (Doc. 61) is **GRANTED**, so Plaintiffs' additional briefing (Docs. 56-59) is **STRICKEN**.

**IT IS SO ORDERED.**

_____s/ Algenon L. Marbley_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: March 17, 2015**