IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES M. RYAN, *et al*, :
:
      Plaintiffs, :
v. : Case No. 2:14-cv-38
:
: JUDGE ALGENON L. MARBLEY
: Magistrate Judge Jolson
PEDRO ROMO, *et al*, :
:
      Defendants. :

## OPINION & ORDER

This matter is before the Court on Plaintiff James M. Ryan's ("Mr. Ryan") Motion for Partial Summary Judgment (Doc. 78) and Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion for Summary Judgment (Doc. 83).

### I. BACKGROUND

#### A. Factual Background

On December 16, 2008, Wells Fargo as "Lender" entered into a Home Equity Conversion Loan Agreement (the "First Mortgage") with Carolyn Ryan as "Borrower," with respect to property located at 3165 Dale Avenue, Columbus Ohio, 43219 ("property"). (Doc. 83-2 at Ex. C, PageId # 1367.) Carolyn Ryan is married to James Ryan. Mr. Ryan executed the First Mortgage, "signing solely to release dower interest." (*Id.* at PageId # 1374.) HUD served as its government insurer. (*Id.* at PageId # 1368.)[1] The First Mortgage included a condition that Wells Fargo can require payment in full, upon approval of the Secretary of HUD, if "the Property ceases to be the principal residence of a Borrower[.]" (*Id.* at PageId # 1370.)

---

[1] Mrs. Ryan also entered into a second mortgage with the Secretary of HUD. This mortgage is not relevant to the current motions for summary judgment.

On December 1, 2011, Wells Fargo sent a letter to Mrs. Ryan stating that taxes on the property had become delinquent. (Dickhaut Decl., Doc. 83-2, at ¶ 6; Ex. E at PageId # 1403.)[2] The letter requested that Mrs. Ryan pay the taxes, and stated that Wells Fargo would advance the taxes should Mrs. Ryan fail to pay them. (*Id.*) The letter sought proof of payment of taxes within thirty (30) days. (*Id.*)

On January 26, 2012, Mr. Ryan called Wells Fargo and stated that the Ryans would pay the taxes. (Dickhaut Decl. at ¶ 7.) By on or about February 13, 2012, Wells Fargo paid the taxes because the Ryans had not. (*Id.* ¶ 8.) On or about April 18, 2012, Wells Fargo learned that the Ryans were contesting the tax valuation for the Property. (*Id.* ¶ 10.) Wells Fargo attempted to reach Mrs. Ryan several times, by mail and by telephone, between February 2012 and October 2012, to no response. (*Id.* ¶¶ 9, 11.)

Wells Fargo requested that Mrs. Ryan confirm that she continued to occupy the property. (*Id.* ¶ 12.) On or about November 27, 2012, Mrs. Ryan returned an occupancy verification form verifying that she occupied the property as her primary residence. (*Id.* Ex. F.) She also provided a phone number. (*Id.*)

Wells Fargo attempted to reach Mrs. Ryan by letter and by telephone dozens of times between December 2012 and December 2013. (Dickhaut Decl. at ¶¶ 15-18, 21, 24, 26.) Mrs. Ryan did not respond, except to send a letter in September 2013 re-affirming her phone number,

---

[2] Mr. Ryan seeks to strike portions of Mr. Dickhaut's declaration because he contends that Mr. Dickhaut relied on hearsay. (Doc. 81 at 2-3.) Mr. Dickhaut interpreted Wells Fargo business records for the purpose of determining how many times Wells Fargo representatives reached out to the Ryans, and in what manner. Mr. Dickhaut's declaration provides that the Wells Fargo records which he consulted "are kept by Wells Fargo in the ordinary course of its business, made at or near the time of the events which they reflect, from information provided or transmitted by a person with knowledge and under a duty to enter accurate information, and are of the type which Wells Fargo regularly maintains. As a result of my review of those records, I have personal knowledge of and am competent to testify as to all matters stated in this declaration." (Dickhaut Decl. at ¶ 1.). As such, Mr. Dickhaut's declaration meets the business records exception to the hearsay rule, and the Court declines to strike it. Fed. R. Evid. 803(6).

her residence at 3165 Dale Avenue, and requesting that Wells Fargo contact her only by mail. (*Id.* ¶ 20; Ex. J.)

On September 6, 2013, Wells Fargo sent a "Non-occupancy notification" letter to Mrs. Ryan, which stated "[w]hen you no longer occupy the above property as your primary residence and are unable to reoccupy this property, your reverse mortgage loan becomes due and payable." (*Id.* Ex I; C. Ryan Decl., Doc. 78-2, at Ex. A.) This letter also requested that Mrs. Ryan complete an enclosed form ("Non-Occupancy Notification"), which would inform Wells Fargo whether Mrs. Ryan intended to reoccupy or sell the property. (*Id.*) Mrs. Ryan did not respond. Wells Fargo sent a similar letter to Mr. Ryan, to which he did not respond. (J. Ryan Decl., Doc. 78-1 at Ex. A.) The letter to Mr. Ryan attached a form seeking the occupancy information of Mrs. Ryan as "borrower." (*Id.*)

In October 2013, Wells Fargo sent an inspector to verify whether Mrs. Ryan occupied the property. The inspector could not do so and instead noted that the occupancy status of the property was unknown. (Dickhaut Decl. at ¶ 22.)

On November 8, 2013, Wells Fargo sent another letter to Mrs. Ryan, requesting that she verify the property as her primary residence. (*Id.* at ¶ 23.) The letter stated that if Mrs. Ryan did not return the verification form by November 29, 2013, it would "presume [she] no longer reside[d] at this address and [her] reverse mortgage w[ould] be in default." (*Id.* Ex. K.) Mrs. Ryan completed the occupancy verification form on November 21, 2013, and sent it to Wells Fargo, which received it on or about December 6, 2013. (*Id.* Ex. K-1, ¶ 25.)

In December 2013, a vendor hired by Wells Fargo called the residence. The person who answered the call identified himself as James M. Ryan SR and refused to provide access to the property. (*Id.* ¶ 26.)

3

On December 17, 2013, Wells Fargo sent a letter to Mrs. Ryan stating that the loan was in default ("Default Letter") because "the property . . . [wa]s no longer [her] primary residence," therefore, "th[e] loan [wa]s due and payable[.]" (*Id.* Ex. L; C. Ryan Decl. at Ex. B.) The letter requests, among other things, that Mrs. Ryan "contact [Wells Fargo] as soon as possible to discuss [her] options." (*Id.*) Wells Fargo sent a similar letter to Mr. Ryan. (J. Ryan Decl. at Ex. B.) The Ryans did not respond, opting to file this lawsuit instead.

In 2014, Wells Fargo assessed property inspection charges against the balance due under the First Mortgage, but has since reversed all inspection charges. (Second Dickhaut Decl., Doc. 83-3, at ¶ 4.) Wells Fargo also sent "Non-occupancy notification" letter to Mr. and Mrs. Ryan on April 29, 2014, attaching a Non-Occupancy Notification listing Mrs. Ryan as "borrower." (J. Ryan Decl. at Ex. C; C. Ryan Decl. at Ex. C.)

Mr. Ryan attaches several affidavits from family members attesting that he and Mrs. Ryan have lived in the property since 2008 as their primary residence. (Docs. 78-3 – 78-5)

Wells Fargo has not filed a foreclosure action relating to this loan. (Second Dickhaut Decl. at ¶ 28.) Nor has Wells Fargo "made any negative credit reporting with respect to the [First Mortgage]" for Mr. or Mrs. Ryan. (Second Dickhaut Decl., Doc. 83-3, at ¶ 5.) Indeed, Wells Fargo is not even treating the loan as defaulted for non-occupancy. (Dickhaut Decl. at ¶ 28.)

**B. Procedural Background**

Plaintiffs sued Wells Fargo, its employee Pedro Romo, and the Secretary of Housing and Urban Development ("HUD") on January 13, 2014. (Doc. 1.) On June 30, 2014, Plaintiffs amended their complaint. (Docs. 27, 28.) The Amended Complaint sought a declaratory judgment that Plaintiffs used the property as their primary residence and alleged claims for

4

defamation, civil conspiracy, breach of contract, age discrimination by elder abuse, fraud, tortious interference, and a violation of the Fair Debt Collection Practices Act ("FDCPA"). (*Id.*)

Defendants filed a motion to dismiss the complaint, which this Court granted on March 17, 2015. (Doc. 64.) Plaintiffs voluntarily dismissed their claims against HUD on April 23, 2015 (Docs. 65, 66), and Mr. Ryan appealed the Court's dismissal order on the same date. (Doc. 67.) Mrs. Ryan did not appeal the Court's dismissal order.

The Sixth Circuit reversed the Court's dismissal of Mr. Ryan's breach of contract and declaratory judgment claims and remanded these claims for further consideration by this Court. The Sixth Circuit affirmed the Court's dismissal of Mr. Ryan's remaining claims. (Doc. 68.)

Mr. Ryan filed his motion for partial summary judgment on September 14, 2016, seeking a declaration that Mr. and Mrs. Ryan used the property as their primary residence. (Doc. 78.) Wells Fargo moved for summary judgment on both claims on January 9, 2017. (Doc. 83.) Both motions are fully briefed and are ripe for review.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hosp.*, 964 F.2d

577, 582 (6th Cir. 1992). Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

The party who has the burden of proof at trial must "make a showing sufficient to establish the existence of [each] element that is essential to that party's case." *Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). Because Plaintiff is proceeding *pro se*, the Court must liberally construe his complaint. *Black v. Parke*, 4 F.3d 442, 448 (6th Cir. 1993). Nonetheless the necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Liberty Lobby*, 477 U.S. at 251-52). In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party, and must draw all reasonable inferences in the non-moving party's favor. *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Liberty Lobby,* 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

### III. ANALYSIS

Defendant Wells Fargo contends that Mrs. Ryan is no longer a party to this case, because she failed to file a notice of appeal, and, therefore, the Sixth Circuit's remand of Mr. Ryan's contract and declaratory judgment claims does not apply to her. As to Mr. Ryan, Wells Fargo moved for summary judgment on these contract and declaratory judgment claims, arguing: (a) Mr. Ryan is not a borrower under the mortgage, so he does not have a claim for breach of the

6

mortgage contract; (b) even if he were a borrower, the Letter of Default does not constitute a breach of the First Mortgage; (c) Mr. Ryan does not have standing to assert a claim for declaratory judgment because he does not own the property and released his dower rights; (d) Mr. Ryan suffered no damages from Wells Fargo's letters; and (e) the occupancy dispute is moot because Wells Fargo does not consider Mrs. Ryan's loan to be in default. (Doc. 83 at 1-2.)

Plaintiff James Ryan's motion for partial summary judgment seeks a declaration that Mr. and Mrs. Ryan do, and did, reside at 3165 Dale Avenue. Mr. Ryan also moved to amend his complaint to add additional claims and parties. The Court will address these arguments in turn.

### A. Status of Carolyn Ryan

Under Federal Rule of Appellate Procedure ("FRAP") 4(a), Mr. and Mrs. Ryan had thirty days from the Court's order dismissing her case to file a notice of appeal. Fed. R. App. P. 4(a)(1)(a). Mr. Ryan filed his Notice of Appeal within these thirty days. (Doc. 67.) Mrs. Ryan never filed a Notice of Appeal. Such a failure is "mandatory and jurisdictional." *United States v. Robinson*, 361 U.S. 220, 224 (1960). Therefore, because she did not appeal, the Court's order dismissing Carolyn Ryan's claims is final as to her, and Carolyn Ryan is no longer a party to this case.

Although FRAP 3(c)(2) provides that "[a] pro se notice of appeal is considered filed on behalf of the signer and the signer's spouse and minor children (if they are parties), unless the notice clearly indicates otherwise," the notice of appeal in this case clearly indicates that Mr. Ryan, not Mrs. Ryan, appealed the Court's order dismissing the Ryans' claims. Mr. Ryan states the following in his Notice of Appeal: "Notice is hereby given that **James M. Ryan** hereby appeal to the United States Court of Appeals for the Sixth Circuit from this Court's Opinion and Order entered in this action on March 17, 2015 (attached hereto)[.]" (Doc. 67 (emphasis

7

added).) He certifies, on the second page, that he served a copy of his Notice of Appeal on: (a) the attorneys for Defendants; and (b) his wife. (*Id.*)

Mr. Ryan's designation of himself (and not his wife) as taking an appeal, and his inclusion of Mrs. Ryan in his certificate of service, clearly indicate that he filed the notice on behalf of himself only. Mr. Ryan, despite his *pro se* status, has demonstrated an understanding of joint and separate pleading. For example, Mr. and Mrs. Ryan jointly signed the initial complaint. (Doc. 1.) On the other hand, Mr. and Mrs. Ryan filed separate Notices of Voluntary Dismissal. (Docs. 65, 66.) Mr. Ryan's Notice of Voluntary Dismissal states that "James M. Ryan hereby voluntary dismisses all claims," (Doc. 65), while Mrs. Ryan's states "Carolyn P. Ryan hereby voluntary dismisses all claims[.]" (Doc. 66.) These Notices of Voluntary Dismissal, filed on the same day as Mr. Ryan's Notice of Appeal, also demonstrate that Mr. Ryan did not include Mrs. Ryan in his Notice of Appeal, because Mr. Ryan's Notice of Voluntary Dismissal included Mrs. Ryan in his certificate of service, and vice versa. (*Id.*)

If Mr. and Mrs. Ryan intended for his Notice of Appeal to include her, they would have added her signature to the Notice, just as the two of them co-signed the initial complaint (*see* Doc. 1). If Mrs. Ryan intended to appeal, she would have filed a separate Notice of Appeal under her signature, just as the two of them filed separate amended complaints, responses in opposition to various motions, motions seeking affirmative relief, and motions voluntarily dismissing HUD from the case. (*see* Docs. 13-17, 20-21, 24-25, 27-28, 31-34, 37-40, 42-43, 56-59, 62-63, 65-66.)

Because Mrs. Ryan did not appeal the Court's order dismissing her case, her case may not be revived by the Sixth Circuit's remand of Mr. Ryan's breach of contract and declaratory judgment claims. *See Piazza v. Aponte Roque*, 909 F.2d 35, 39 (1st Cir. 1990) (district court

judgment became final as to defendants whose names did not appear on notice of appeal, despite appellate court's partial reversal of that order as to one defendant).

### B. James Ryan's Contract Claim

Mr. Ryan claims that Wells Fargo breached the First Mortgage contract by sending the December 17, 2013 letter to the Ryans. (Am. Compl., Doc. 27, at ¶ 48.) This letter, Mr. Ryan claims, "constitute[d] a notice of acceleration breaching the terms of the [First Mortgage.]" (*Id.*)[3]

To recover for breach of contract under Ohio law, Mr. Ryan must prove "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Greenzalis v. Nationwide Mut. Ins. Co.*, 2016-Ohio-8344, ¶ 20 (Ohio App. 10 Dist. 2016) (internal quotation omitted); *Pavlovich v. National City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (citing *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 807 N.E.2d 953, 957 (Ohio App. 2004)).

Wells Fargo argues that Mr. Ryan has no contract claim, because he: (a) is not a borrower under the First Mortgage, so he has no claim for breach of the First Mortgage contract; (b) the Letter of Default would not have constituted a breach even if he were a borrower; and (c) he suffered no damages from Wells Fargo's Default Letter.

Mr. Ryan counters that his breach of contract claim should survive summary judgment, because: (a) he contracted by releasing his dower rights and Wells Fargo's actions in sending the Default Letter harmed these rights; and (b) he claims that a Wells Fargo representative told him that he was a "homeowner" under the National Housing Act, which allegedly deferred the

---

[3] As it noted in its dismissal order, the Court liberally construes Mr. Ryan's *pro se* amended complaint to allege breach of the contract with Wells Fargo, the remaining defendant in this case. (Doc. 64 at 14 n.3)

9

"obligation to satisfy the loan obligation . . . upon his wife's death if she preceded him until his death or expiration of the terms of the mortgage." (Doc. 84 at 6.)

Wells Fargo has the better argument. The First Mortgage delineates rights and obligations among Wells Fargo as "Lender" and Mrs. Ryan as "Borrower." (Doc. 83-2 at Ex. C, PageId # 1367.) Mr. Ryan signed the First Mortgage for the sole purpose of releasing his dower rights. (*Id.* at PageId # 1374.) He is not a "Borrower" under the First Mortgage. (*Id.* at PageId # 1367.) Therefore, he does not have standing to assert the claims and defenses of the "Borrower," including breach of contract. *Bonnieville Towers Condominium Owners Assn., Inc. v. Andrews*, 2008-Ohio-1833, ¶ 36 (Ohio App. 2008) (non-borrower spouse who released dower interest could not assert affirmative defenses and counterclaims to foreclosure that were available only to the title holder spouse of the property); *Citi, Inc. v. Richey*, 2015-Ohio-4154, ¶ 18 (Ohio App. 2015) (Lender has no obligation to provide contractual notice of default prior to acceleration of loan to spouse who "signed and initialed the Mortgage in order to release his dower rights, but [who] is not a Borrower under the terms of the Note and Mortgage."). Mr. Ryan is seeking to assert affirmative rights of a borrower under the First Mortgage. (Doc. 84 at 6.) He has no standing to do so.[4] The fact that Wells Fargo addressed a Default Letter to him in addition to Mrs. Ryan does not alter the Court's conclusion. (*See* Doc. 84 at 7.) The First Mortgage created the contractual relationship between the parties. A Default Letter, unilaterally sent to Mr. Ryan by Wells Fargo, may not create obligations on the part of Mr. Ryan just as it may not create in Mr. Ryan a right to sue.

---

[4] Mr. Ryan asserts that his Constitutional right to Due Process is abridged by his inability to argue on behalf of his wife. (Doc. 84 at 2.) Mr. Ryan is incorrect. Due Process affords Mr. Ryan notice and an opportunity to be heard on *his* claims—it does not afford him notice and an opportunity to be heard on Mrs. Ryan's claims. *See Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (due process affords those whose rights are affected notice and an opportunity to be heard).

Even if Mr. Ryan had standing to assert a breach of contract claim because he received the Default Letter that erroneously stated that he did not use the property as his primary residence, such a letter is not a breach of the First Mortgage. Rather, it is a condition precedent to Wells Fargo's ability to foreclose on the loan. *U.S. Bank N.A. v. Aguilar-Crow*, 2016-Ohio-5391, ¶ 40 (Ohio App. 2016). Failure of Wells Fargo to satisfy the condition precedent harms its ability to foreclose under the First Mortgage, but it does not give rise to a breach of contract claim. *Apex Energy Group, LLC v. Apex Energy Solutions of Cincinnati, LLC*, No. 1:12-cv-466, 2013 WL 394464, at *10 (S.D. Ohio Jan. 31, 2013); 13 Williston on Contracts § 38:5 (4th ed.) ("Nonoccurrence of a condition prevents the promisee from acquiring a right, or deprives it of one, but subjects it to no liability").

Moreover, Mr. Ryan suffered no damages from the Default Letter. The Sixth Circuit reversed this Court's dismissal order on breach of contract damages because "[t]he amended complaint alleges that Wells Fargo's accelerating the mortgage negatively affected the Ryans' credit." (Doc. 68.) Now, at the summary judgment stage, it is clear that the Wells Fargo letter caused the Ryans no harm to their credit. And Wells Fargo has reversed all inspection charges it had previously assessed. Wells Fargo made no negative reporting with respect to the First Mortgage for either Mr. Ryan or Mrs. Ryan. And Mr. Ryan has not provided a scintilla of evidence to refute this fact. Mr. Ryan's assertions that he was "accused of being a liar as to his obligations which lies were transmitted by Wells Fargo to other people thereby affecting Ryan's reputation and subjecting him to ridicule shame and disgrace personally and as a real estate broker and business man" are completely unsupported in the record. Mr. Ryan points to no evidence that Wells Fargo shared the Default Letter with anyone other than himself and his wife.

11

Finally, Mr. Ryan's argument that a Wells Fargo representative told him that he was a "homeowner" under the National Housing Act, which allegedly deferred the "obligation to satisfy the loan obligation . . . upon his wife's death if she preceded him until his death or expiration of the terms of the mortgage," (Doc. 84 at 6), is barred by the Statute of Frauds. Under the Ohio Statute of Frauds, "[n]o action shall be brought whereby to . . . charge a person upon . . . a contract or sale of lands . . . , or interest in or concerning them, . . . unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized." Ohio Rev. Code § 1335.05. In other words, a promise affecting interests in land must be made in writing. The First Mortgage contains no such promise, and Mr. Ryan has pointed to no other writing signed by Wells Fargo or its authorized representative which embodies such a promise.

For the foregoing reasons, Wells Fargo's Motion for Summary Judgment (Doc. 83) is **GRANTED** as to Mr. Ryan's claim for breach of contract.

### C. Declaratory Judgment

Mr. Ryan seeks a declaration that he and his wife have lived at 3165 Dale Avenue in Columbus, Ohio, and that this home was their primary residence within the requirements of their reverse mortgage. (Doc. 78 at 1.)

Wells Fargo contends that Mr. Ryan has no standing to assert a claim for declaratory judgment, and that, even if he had standing, there is no ongoing controversy between the parties. (Doc. 80 at 10.)

A declaratory judgment "provides a means by which parties can eliminate uncertainty regarding their legal rights and obligations." *Mid-American Fire and Cas. Co. v. Heasley*, 863

N.E.2d 142, 145 (Ohio 2007).[5] The Court may not make a declaratory judgment unless there is "an actual controversy, the resolution of which will confer certain rights or status upon the litigants." *Id.* (internal quotation and citation omitted). At the time the Sixth Circuit remanded Mr. Ryan's declaratory judgment claim, Wells Fargo "ha[d] not conceded that the Ryans use the property as their primary residence or that the Ryans need not repay the mortgage balance to avoid foreclosure." (Doc. 68 at 6.)

At this time, however, Wells Fargo submitted an affidavit which affirms that it is not treating the First Mortgage as defaulted for non-occupancy. (Dickhaut Decl. at ¶ 28.) If the First Mortgage is not treated as in default for non-occupancy, then the loan is not currently in default for non-occupancy, and Wells Fargo has admitted that it has no right at this juncture to seek acceleration of the loan and foreclosure for non-occupancy. (*Id.*; Doc. 80 at 10.) Therefore, Wells Fargo at this time has "conceded that the Ryans use the property as their primary residence [and] that the Ryans need not repay the mortgage balance to avoid foreclosure." (Doc. 68 at 6.) Because Wells Fargo has conceded as much, there is no longer a live controversy about whether the Ryans use the property as their primary residence.

Moreover, Mr. Ryan, because he is not the "Borrower" under the First Mortgage, has no obligation to use the property as his primary residence. Therefore, whether he does so is irrelevant to the current dispute.

Because there is no live controversy regarding the primary residence of Mrs. Ryan, the Court **GRANTS** Wells Fargo's Motion for Summary Judgment (Doc. 83) on Mr. Ryan's declaratory judgment claim and **DENIES** Mr. Ryan's motion for partial summary judgment. (Doc. 78.)

---

[5] The Court applies Ohio law to declaratory judgment actions when sitting in diversity. *Aarti Hospitality, LLC v. City of Grove City*, 350 F. App'x 1, *6 (6th Cir. 2009).

### D. Motion to Amend Complaint

Mr. Ryan moves to amend his complaint to re-assert an FDCPA claim against Wells Fargo, to re-join HUD into his breach of contract claim against Wells Fargo, and to seek a declaration which expunges any record of the "FHA case number" from the records of Wells Fargo, HUD, or, it appears, anyone else. (Doc. 81 at 4-5.)

The proposed amendments to Mr. Ryan's complaint would be futile because any such amendments would not survive a motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.") (internal citation omitted). First, the Court already dismissed, and the Sixth Circuit already upheld the Court's dismissal, of Mr. Ryan's FDCPA claim. Second, the Court already determined that Wells Fargo, and not HUD, was the creditor for the loan, which is the basis under which Mr. Ryan seeks to amend his complaint to re-assert claims against HUD. And third, an FHA case number is simply a number assigned to loans. The Court sees no set of facts under which Mr. Ryan would succeed in removing the FHA number from the reverse mortgage at issue in this case.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Mr. Ryan's motion for partial summary judgment (Doc. 78) and **GRANTS** Wells Fargo's motion for summary judgment. (Doc. 83.) This case is hereby **DISMISSED.**

**IT IS SO ORDERED.**

      /s/ Algenon L. Marbley_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: May 22, 2017**